**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHILDREN'S BAPTIST HOME OF SOUTHERN CALIFORNIA, Respondent.**

**No. 76–3724.**

United States Court of Appeals, Ninth Circuit.

June 9, 1978.

Christine W. Peterson (argued), Washington, D. C., for petitioner.

Jeffrey C. Freedman (argued), of Goldstein, Freedman, Ownbey & Klepetar, Los Angeles, Cal., for respondent.

Before WALLACE and SNEED, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

The National Labor Relations Board seeks enforcement of a bargaining order entered against the Children's Baptist Home of Southern California. This case presents unique issues concerning the Board's procedure and the exercise of its discretionary jurisdiction. We grant enforcement.

I

In November 1973, the American Federation of State, County and Municipal Employees (the Union) petitioned the National Labor Relations Board for certification as the collective bargaining representative of various employees of the Children's Baptist Home of Southern California (the Home), a resident care center for emotionally disturbed children. In response to the petition, the Board conducted a hearing in order to determine whether or not it had jurisdiction over the matter and, if so, to create a factual record to aid the Board in the discharge of its duties. *See* National Labor Relations Act (NLRA) § 9(c), 29 U.S.C. § 159(c).

As a result of the hearing, the Board, acting through its regional director, concluded that the labor dispute satisfied the Board's statutory jurisdiction in that it presented a question "affecting commerce." NLRA § 9(c), 29 U.S.C. § 159(c). In addi-

tion, the regional director concluded that even though the Board had not established specific discretionary jurisdictional standards for non-profit institutions for emotionally disturbed children, it would be appropriate to exercise such jurisdiction over the Home.[1] The regional director's determination was based largely on the fact that the Board had recently asserted jurisdiction over two institutions of similar character and size. *See Jewish Orphan's Home*, 191 N.L.R.B. 32 (1971); *Children's Village, Inc.*, 186 N.L.R.B. 953 (1970). Finally, the regional director ordered a representation election to be conducted among the Home's employees. The Home did not file a request for review of the regional director's decision to assert jurisdiction.

In January 1974, the election was held and the Union captured a majority of the eligible employees. The Home countered by filing objections to the election based on alleged misrepresentations by the Union. The regional director conducted an investigation of the Home's objections and issued a report in which he recommended that a hearing be held on one of the objections and that the others be rejected.

In April 1974, the Home filed exceptions to the regional director's report in which it reasserted its objections. In June 1974, before the Board ruled on its exceptions, the Home filed an amendment to its exceptions in which it challenged for the first time the regional director's assertion of discretionary jurisdiction. The Home's challenge was based on the Board's May 24, 1974 decision

---

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

1. The National Labor Relations Act invests the Board with jurisdiction over all cases "affecting commerce." This standard, which applies to both representation (section 9(c)) and unfair labor practice cases (section 10(a)), has been construed to give the Board the broadest power possible under the Commerce Clause. *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). In order to focus its resources, however, the Board has adopted the policy of setting "discretionary jurisdiction" standards which are expressed as a dollar amount of business volume. *See Siemons Mailing Serv.*, 122 N.L.R.B. 81 (1958). This

policy was expressly approved by Congress in the Landrum-Griffin Act of 1959. *See* 29 U.S.C. § 164(c)(1). Except for the limitation contained in this statutory provision, the formulation of discretionary jurisdictional standards is committed to the sound discretion of the Board. *NLRB v. Anthony Co.*, 557 F.2d 692, 694–95 (9th Cir. 1977); *NLRB v. Carroll-Naslund Disposal, Inc.*, 359 F.2d 779, 780 (9th Cir. 1966); *NLRB v. W. B. Jones Lumber Co.*, 245 F.2d 388, 390–91 (9th Cir. 1959).

In the case before us, there is no question that the Home affects commerce. Accordingly, we deal only with questions concerning the Board's exercise of its discretionary jurisdiction.

in *Ming Quong Children's Center*, 210 N.L.R.B. 899 (1974), in which the Board overruled *Jewish Orphan's Home* and *Children's Village, Inc.*, and announced a policy of declining jurisdiction over non-profit child care centers.

In the meantime, on April 16, 1974, the Union initiated an unfair labor practice case, alleging that the Home had illegally discharged 13 employees because of their protected concerted activity.

On December 5, 1974, the Board rejected the Home's jurisdictional challenges advanced in its amended exceptions. 215 N.L.R.B. 306 (1974). The Board's refusal to apply its recently announced *Ming Quong* rule to this case was premised on two considerations. First, the Board observed that the Home had failed to file a timely request for review of the regional director's decision to assert jurisdiction. *See* 29 C.F.R. § 102.-67(b). More significantly, the Board viewed the jurisdictional question in light of the total facts—including the companion unfair labor practice case—and concluded that to withdraw its jurisdiction "would leave the employees open to alleged employer retaliation which they had justifiably believed would *not* result from their protected concerted activities [and] would deprive the employees of the fruits of union representation and collective bargaining which they had justifiably believed *would* result from their protected concerted activities." 215 N.L.R.B. at 307.

Following a subsequent round of proceedings in which the Home's election objections were overruled,[2] the Union was certified on November 7, 1975 as the collective bargaining representative for certain of the Home's employees. Shortly thereafter, the Union formally requested the Home to begin negotiations. The Home promptly rejected the bargaining request, and has continued to do so.

In March 1976, the Union brought unfair labor practice charges against the Home, challenging its refusal to meet and bargain as a violation of sections 8(a)(5) and (1) of the Act. 29 U.S.C. § 158(a)(5), (1). Because the Home's answer to the unfair labor practice complaint was essentially a reassertion of its jurisdictional challenge, the General Counsel moved for summary judgment. The Home countered with a cross motion for summary judgment which relied exclusively on the *Ming Quong* jurisdictional argument.

On September 20, 1976, the Board granted the General Counsel's motion for summary judgment, holding that the Home's refusal to bargain was a violation of sections 8(a)(5) and (1). 226 N.L.R.B. 6 (1976). The Board's rejection of the Home's jurisdictional argument was based on two grounds. First, the Home's argument could not prevail because of the rule that "in the absence of newly discovered or previously unavailable evidence or special circumstances a respondent in a proceeding alleging a violation of Section 8(a)(5) is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding." 226 N.L.R.B. at 7. *See Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 161–62, 61 S.Ct. 908, 85 L.Ed. 1251 (1941); *NLRB v. Decoto Aircraft, Inc.*, 512 F.2d 758, 761 (9th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); 29 C.F.R. § 102.67(f). Since the Home had fully litigated its jurisdictional claim in the underlying representation case, it was therefore not entitled to do so again in the instant unfair labor practice case. The Board's second basis for granting summary judgment against the Home was that it had recently overruled *Ming Quong* and returned to its original jurisdictional policy, thereby negating the logical force of the Home's jurisdictional argument. *See Rhode Island Catholic Orphan Asylum (St. Aloysius Home)*, 224 N.L.R.B. 1344 (1976).

The case is now before us on the Board's application for enforcement of its remedial order entered in connection with its grant of the General Counsel's motion for summa-

2. During these proceedings, the initial unfair labor practice case involving the discharge of the 13 employees was settled.

ry judgment. The Home first resists the Board's application on the grounds that (1) the Board's use of its quasi-adjudicatory powers to set jurisdictional policy was an abuse of discretion and (2) the retroactive application of *St. Aloysius Home* to this case constituted a denial of statutory and due process rights. We disagree.

## II

The National Labor Relations Board is congressionally endowed with both quasi-adjudicatory and quasi-legislative powers. Therefore, "the Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974). With respect to the type of decision challenged in this case, the Act expressly empowers the Board to use either its adjudicatory or rulemaking procedure to establish discretionary jurisdictional standards. NLRA § 14(c)(1), 29 U.S.C. § 164(c)(1). The choice of procedure is committed to the Board's discretion. *Id.*

The thrust of the Home's argument is that the Board abused this discretion by twice reversing its jurisdictional policy vis-a-vis institutions such as the Home within three years. Periodic changes in public policy by executive branch officers, however, are an inherent aspect of a democratic political system. With respect to our national labor policy, some degree of change is essential to keep that policy responsive to the problems of complex industrial life. As the Supreme Court has observed,

> [t]he use by an administrative agency of the evolutional approach is particularly fitting. To hold that the Board's earlier decisions [freeze] the development of

. . . important aspect[s] of the national labor law would misconceive the nature of administrative decision-making. " 'Cumulative experience' begets understanding and insight by which judgments . . . are validated or qualified or invalidated. . . ."

The responsibility to adapt the Act to changing patterns of industrial life is entrusted to the Board.

*NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265–66, 95 S.Ct. 959, 967–68, 43 L.Ed.2d 171 (1975).

Although the Board's discretion in selecting the process for establishing elements of our evolving labor policy is broad, it is not boundless. Thus, "there may be situations where the Board's reliance on adjudication [as opposed to rulemaking] would amount to an abuse of discretion . . . ." *NLRB v. Bell Aerospace Co.*, *supra*, 416 U.S. at 294, 94 S.Ct. at 1771. *See generally* Silverman, *The Case for the National Labor Relations Board's Use of Rulemaking in Asserting Jurisdiction*, 25 Lab. L.J. 607 (1974). We believe, however, that one alleging that the Board has abused its discretion carries a burden of showing that the Board's actions were unfair and that the party was to some degree prejudiced by that unfairness. We do not have such a case here.

We need not decide whether the Board's two complete reversals on an important question of jurisdictional policy without the notice and comment safeguards of rulemaking approach the limits of its discretion. It is clear that in this case, the Board's actions were not unfair vis-a-vis the Home. The Board originally asserted jurisdiction over the Home in conformity with its existing jurisdictional rules and has consistently continued to assert jurisdiction to this day.[3] Thus, the Board's changes in

---

**3.** We believe the Board's decision to continue to assert jurisdiction after *Ming Quong* in order to protect the Home's employees was entirely proper. We agree that "[h]aving placed [the employees] in the position of opposing the interests of [their] employer, the Board cannot in good conscience leave [them] to the ungentle 'mercy' of that employer, merely because in the

interim the Board has changed its jurisdictional policies so as to exclude the [employees]." *Pederson v. NLRB*, 234 F.2d 417, 420 (2d Cir. 1956), *quoting, Eugen Pederson,* 114 N.L.R.B. 166, 167 (1955) (Murdock, dissenting). As a more general rule, the Board may assert its full statutory jurisdiction over a particular matter, even though its discretionary standards are not

policy did not cause the Home any uncertainty as to its duties with respect to its employees or the Board. In short, the Board's policy changes simply had no impact on this employer. On these facts, the Home cannot successfully argue that the Board's use of its adjudicatory process to effect these policy changes was an abuse of discretion.

This analysis is also dispositive of the Home's related argument that the Board improperly applied its *St. Aloysius Home* decision retroactively. In *St. Aloysius Home*, the Board simply realigned its general policy to conform with its position in this case. If the Board had withdrawn jurisdiction based on *Ming Quong*, and then reasserted jurisdiction on the basis of *St. Aloysius Home*, we might have a materially different case. Since its exercise of jurisdiction in this case was both consistent and entirely proper, however, the continued assertion of such jurisdiction simply did not depend upon the *St. Aloysius Home* decision.

### III

The Home's alternative ground for resisting enforcement is that the Board improperly overruled its objections to the conduct of the representation election. The Board counters by urging that we are precluded by section 10(e) of the Act, 29 U.S.C. § 160(e), from reviewing the Board's rejection of these challenges.

Section 10(e) provides in part that "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." The Supreme Court has interpreted this section rather rigidly by disapproving judicial consideration of claims which were not originally presented to the Board. *See, e. g., NLRB v. Local 476, United Ass'n of Journeymen*, 368 U.S. 401, 82 S.Ct. 423, 7 L.Ed.2d 382 (1962); *NLRB v. United Mine Workers*, 355 U.S. 453, 463–64, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958).

■ Of course, the Home urged its objections concerning the election to the Board during the course of the underlying representation proceeding. The thrust of the Board's argument, however, is that because our review is of the subsequent unfair labor practice proceeding, the Home was required to raise these objections again in that proceeding, in order to preserve them for judicial review. In light of its rule which precludes the litigation in an unfair labor practice case of any issue which was or could have been raised in the underlying representation proceeding,[4] the Board's position in this case would seem to require the opposing party to take a meaningless step in the unfair labor practice proceeding. However, viewing the issue in the context of the appropriate roles of the labor board and this court in effectuating our national labor policy, we believe the Board's position to be correct. We therefore hold that an objection made during the course of a representation proceeding must be reasserted in the subsequent unfair labor practice case in order to be preserved for review by this court.

Our holding is supported by both precedent and sound policy considerations. In *NLRB v. Southbridge Sheet Metal Works, Inc.*, 380 F.2d 851 (1st Cir. 1967), the First Circuit considered this precise question. The court held that an objection in the representation case which was not made again in the subsequent 8(a)(5) case was

satisfied, in order to effectuate the Act. *See, e. g., Iron Workers Local 577 (Tri-State Erectors)*, 199 N.L.R.B. 37 (1972). Thus, the Board's continued assertion of jurisdiction after *Ming Quong* would be sustainable on this basis.

4. In *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) the Supreme Court upheld the Board's refusal to allow relitigation of a representation issue in a related unfair labor practice case. *Id.* at 161–62, 61 S.Ct. 908. The Board's relitigation policy was codified in 29 C.F.R. § 102.67(f). *See NLRB v. W. S. Hatch Co.*, 474 F.2d 558, 562–63 (9th Cir. 1973). *See generally* Note, *The Permissible Scope of the National Labor Relations Board's Rule Against Relitigation*, 69 Mich.L. Rev. 569 (1971).

"not sufficient to save the issue for review, because it did not fairly put the Board on notice that the asserted validity of the election was to be posed as a defense to the 8(a)(5) charge." *Id.* at 854. *See also Herald Co. v. Vincent*, 392 F.2d 354, 359 n. 4 (2d Cir. 1968); *cf. NLRB v. Capital Bakers, Inc.*, 351 F.2d 45, 48 (3rd Cir. 1965) (representation issue preserved for review because reasserted in unfair labor practice case). *But see Glen Manor Home for Jewish Aged v. NLRB*, 474 F.2d 1145, 1149 (6th Cir.), *cert. denied*, 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973).

In *Southbridge*, the court also rejected the argument that the Board's relitigation policy would have reduced a subsequent objection to meaningless form. We agree on a basis of *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952). In *Tucker Truck Lines*, the Supreme Court considered a similar issue in a case involving the Interstate Commerce Commission. The Court held that a three-judge district court reviewing an ICC order had erred in considering a claim not pressed in the administrative proceedings even though the commission had a policy of rejecting all such claims.

> [O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence.

*Id.* at 37, 73 S.Ct. at 69 (footnote omitted).

An additional consideration weighs heavily in favor of requiring a party to renew its contentions in the unfair labor practice proceeding. The Board has shown by example that its relitigation rule is not inflexible and that it may consider a question previously determined in a related representation case. *See American Bread Co. v. NLRB*, 411 F.2d 147, 152 (6th Cir. 1969). We believe the Board should be given the opportunity to make this decision in each case.

 In light of the fact that the Home did not raise its election objections in the unfair labor practice case, it cannot seek review of those issues here in the absence of extraordinary circumstances. There are no such compelling circumstances.

ENFORCED.