**NATTER MANUFACTURING CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–3730.

United States Court of Appeals, Ninth Circuit.

Aug. 15, 1978.

Joseph Herman (argued), of Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, Cal., for petitioner.

Howard F. Fine, Atty. (argued), Washington, D. C., for respondent.

Before WALLACE and SNEED, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

Natter Manufacturing Corporation (Natter) petitions for review of the National Labor Relations Board's decision that Natter has violated its statutory duty to bargain in good faith with the certified bargaining representative of its employees. We find Natter's contentions to be unpersuasive and we therefore grant the Board's cross-application for enforcement.

I

On April 20, 1973, Local 170 of the Sheet Metal Workers' International Association (Union) petitioned the NLRB for certification as the collective bargaining representative of Natter's production and maintenance employees. On April 25, the Board's regional director notified the parties that a representation hearing would be held on May 23, 1973. Two weeks prior to the scheduled hearing, Natter filed with the Board a motion seeking permission to introduce evidence at the hearing of the Union's discriminatory practices. The Board subsequently denied the motion with the express qualification that Natter could reassert this issue following the potential representation election.

At the representation hearing held on May 23, Natter renewed its contention that the issue of the Union's alleged discriminatory practices should be litigated prior to the election. On June 15, the regional director issued his decision directing an election and rejecting Natter's contention that it should be permitted to litigate the discrimination issue prior to the election. Natter subsequently requested the Board to review the regional director's decision. That request was denied on the ground that it "raise[d] no substantial issues warranting review."

On July 13, 1973, the election was conducted; 150 votes were cast for the Union and 151 were cast against the Union. The Union timely filed objections to the conduct of the election. The Union's primary objection was that on the day of the election, certain of Natter's officials had distributed to the voting employees a campaign flyer which contained a substantial, material misrepresentation. The flyer stated in part:

We have been advised the National Labor Relations Board has found Local 170 guilty of five (5) unfair labor practices at Accuride. The Union was found guilty of harassment, intimidation, and coercion toward employees at Accuride.

In fact, the dispute between the Union and the employer referred to in the flyer had been resolved pursuant to a settlement agreement. By its express terms, the agreement did not constitute an admission by the Union that it had engaged in any unfair labor practice. By the same token, the agreement certainly did not constitute an adjudication that the Union had breached its statutory duties.

The Board, agreeing with the Union's claim that Natter's misrepresentation had impermissibly interfered with the fair conduct of the election, set aside the results of the election. 210 N.L.R.B. 118 (1974). Significantly, the Board's ruling was based upon its prior decision in *Dubie-Clark Co.*, 209 N.L.R.B. 217 (1974), in which the Board had set aside election results because of the union's mischaracterization of a settlement agreement as a finding that the employer had committed unfair labor practices. *Id.* at 218. In so doing, the Board explicitly condemned the misuse or mischaracterization of its documents or processes in order to secure partisan advantage.

At the Board's direction, a second election was held on May 23, 1974, which resulted in the Union receiving a majority of the votes cast. Accordingly, on May 30, Natter moved the Board to disqualify the Union from certification on the grounds that the Union engaged in race and sex-based discrimination. Natter also requested that the

---

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

Board conduct a hearing on its discrimination claim.

Natter's motion and hearing request were supported primarily by citations to several cases in which various other locals of the Sheet Metal Workers' International, and the International itself, had been found guilty of unlawful discrimination, and various provisions of the International's constitution which allegedly demonstrate the International's control over its locals.

The Board's regional director denied the motion and refused to grant the hearing on the grounds that the International and its locals were legally discrete entities. Therefore, since Natter had made *no* showing of past or present discrimination on the part of Local 170, Natter had not made out a prima facie showing which would entitle it to a hearing on its claim. The regional director therefore certified the Union. Natter's subsequent request for Board review of the regional director's decision was denied.

Following culmination of the representation proceedings, Natter has steadfastly refused to bargain with the Union. As a result, the Union brought unfair labor practice charges, claiming that Natter's refusal to bargain constitutes a violation of section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). In resistance to the section 8(a)(5) charge, Natter reasserted its claims that the Union engaged in discriminatory practices and that the Board had erred in setting aside the results of the first election.[1]

On the General Counsel's motion for summary judgment, the Board rejected Natter's contentions and ruled that Natter had violated its duty to bargain in good faith with its employees' certified representative. 221 N.L.R.B. 13 (1975). The basis of the rejection was that the issues had been previously litigated in the underlying representation case, and that in the absence of new-

ly discovered or previously unavailable evidence, Natter could not relitigate these issues in the present unfair labor practice case. See 29 C.F.R. § 102.67(f); see *also NLRB v. Children's Baptist Home*, 576 F.2d 256, at 261 n.4 (9th Cir., filed June 9, 1978).

Natter's petition for review raises its contentions that the Board erred in (1) setting aside the results of the first election, and (2) denying Natter a hearing on its allegation that the Union practiced invidious discrimination. We disagree.

## II

In *Hollywood Ceramics*, 140 N.L.R.B. 221 (1962), the Board explained its policy of setting aside election results when a party's pre-election "misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election." *Id.* at 224. While the case before us was pending on appeal, however, the Board issued its decision in *Shopping Kart Food Market, Inc.*, 228 N.L.R.B. No. 190 (1977) in which the Board overruled *Hollywood Ceramics* and announced that it would "no longer set elections aside on the basis of misleading campaign statements." *Id.*, slip op. at 9. Although Natter correctly points out that the Board is applying *Shopping Kart* retroactively, see *Shalom Nursing Home*, 230 N.L.R.B. No. 145 (1977), it is clear that *Shopping Kart* does not control here.

In *Shopping Kart*, the Board carefully explained that it would continue to set aside election results "in instances where a party has engaged in such deceptive campaign practices as improperly involving the Board and its processes. . . ." 228 N.L.R.B. No. 190, slip op. at 9. In subsequent cases, the Board has carefully preserved this distinction between general campaign misstatements, and misrepresentations pertaining to the Board, its docu-

---

1. We recently reiterated the rule that a party must reassert its objections pertaining to a representation proceeding in a related unfair labor practice proceeding in order to preserve those objections for review by this court. *NLRB v. Children's Baptist Home*, 576 F.2d 256, at 261–262 (9th Cir., filed June 9, 1978).

Thus, since Natter properly followed this procedure, we may review its objections regarding the underlying representation case in determining whether to enforce the Board's order in the subsequent unfair labor practice case. *See AFL v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed.2d 347 (1940).

ments, and processes. *See Formco, Inc.,* 233 N.L.R.B. No. 5 (1977), and *Shalom Nursing Home, supra,* 230 N.L.R.B. No. 145.

In *Formco,* the Board considered the consequences of a union's pre-election statement that the employer had been found guilty of unfair labor practices when in fact the employer had signed a settlement agreement containing a nonadmission clause. In setting aside the election, the Board again instructed that "*Shopping Kart* did not change Board law with regard to improper use of the Board and its processes for election campaign purposes." 233 N.L.R.B. No. 5, slip op. at 3. Therefore, as *Formco* explains, the Board's decision in *Shopping Kart* in no way undermined the vitality of its decision in *Dubie-Clark.*

Of course, the misrepresentations condemned in *Formco* and *Dubie-Clark* are essentially identical to the one in question in the case before us. The only remaining question, therefore, is whether, as Natter argues, the Board's differentiation between general election propaganda and misrepresentations pertaining to the Board and its processes is so irrational as to constitute an abuse of discretion. We believe the Board's rule relating to campaign statements which misrepresent the Board's processes is within the Board's "wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A. J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946); *accord, NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 767, 89 S.Ct. 1429, 22 L.Ed.2d 709 (1969); *Hecla Mining Co. v. NLRB,* 564 F.2d 309, 313 (9th Cir. 1977); *NLRB v. W. S. Hatch Co.,* 474 F.2d 558, 560–61 (9th Cir. 1973); *cf. Linden Lumber Div. v. NLRB,* 419 U.S. 301, 310, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974) (Board's rule that union must seek election where employer

refuses to recognize majority status on the basis of authorization cards upheld as not "arbitrary and capricious or an abuse of discretion"). We agree with the Board that it has a paramount interest in maintaining an apparent, as well as actual, even-handed role in the process of orderly labor relations. The Board's rule, designed to prevent the misuse of its decisions, orders, documents, and other processes to obtain an election advantage, is a permissible method of enhancing that vital interest. *See NLRB v. Clarytona Manor, Inc.,* 479 F.2d 976, 980 (7th Cir. 1973).

### III

Natter's final claim is that the Board erred in refusing to conduct a hearing on its allegation that the Union engages in unlawful discriminatory practices.

As we have consistently explained, in order to obtain a hearing on an election objection, "the objecting party must supply prima facie evidence, presenting 'substantial and material factual issues' which would warrant setting aside the election." *NLRB v. L. D. McFarland Co.,* 572 F.2d 256, 261 (9th Cir. 1978), *quoting Alson Mfg. Aero. Div. of Alson Indus., Inc. v. NLRB,* 523 F.2d 470, 472 (9th Cir. 1975); *accord, NLRB v. Sauk Valley Mfg. Co.,* 486 F.2d 1127, 1133 (9th Cir. 1973); *NLRB v. Singleton Packing Corp.,* 418 F.2d 275, 280 (5th Cir. 1969), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970); *NLRB v. Bata Shoe Co.,* 377 F.2d 821, 825–26 (4th Cir. 1967); *see also* 29 C.F.R. § 102.69(d). Thus, if the objector fails to proffer specific evidence which would constitute a prima facie showing of its contentions, or if those contentions, even if true, would not warrant setting aside the election, then the Board need not grant an administrative hearing.[2]

---

2. During the administrative proceedings, the Board was following a policy of denying certification to labor unions which engaged in racial discrimination. The Board believed this policy to be compelled by the U.S. Constitution. *Bekins Moving & Storage Co.,* 211 N.L.R.B. 138 (1974). While this case was pending on appeal, the Board overruled *Bekins* and concluded

that it would no longer deny certification on these grounds, but rather would resolve allegations of union discrimination during appropriate unfair labor practice proceedings. *Handy Andy, Inc.,* 228 N.L.R.B. No. 59 (1977). The correctness of the Board's *Handy Andy* rule remains an open question; at least one court of appeals has held that the constitution prohibits

■ We fully agree with the conclusion of the Board that Natter has presented no *facts* which would establish a prima facie case that this particular union is guilty of racial discrimination. Natter's reference to decisions involving the Sheet Metal Workers' International and other affiliated locals does not carry its burden. Absent a showing that Local 170 was virtually dominated by the International or a tainted local, the allegations concerning the other organizations are little, if any, evidence that Local 170 engages in discriminatory practices.[3] *NLRB v. Bancroft Mfg. Co.*, 516 F.2d 436, 447 (5th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *see also NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 929 n. 21 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977). Thus, having failed to make out a prima facie showing, Natter was not entitled to a hearing.[4]

ENFORCED.

the Board from certifying discriminatory unions. *See NLRB v. Mansion House Center Management Corp.*, 473 F.2d 471 (8th Cir. 1973).

Under the facts of this case, however, we need not determine the correctness or the retroactivity of *Handy Andy*. *Handy Andy* neither affects the union's duty of fair representation nor obviates the Board's policy of permitting the employer to request a hearing on this issue. *Handy Andy* merely prevents the employer from raising this issue in the representation case and requires it to do so, if at all, in the subsequent unfair labor practice proceedings. Since Natter raised the discrimination issue in the unfair labor practice case, *Handy Andy* does not affect our analysis of the correctness of the Board's refusal to hold a hearing on this issue.

3. Natter draws our attention to various provisions in the Sheet Metal Workers' constitution in order to establish this domination. We find nothing in these provisions, however, which would warrant a conclusion that if the International discriminates on the basis of race, then Local 170 does too. In other words, these rather standard provisions coupled with evidence of past unlawful conduct by the International do not provide specific evidence of current unlawful conduct by Local 170.

4. Natter argues that without a hearing and the concomitant opportunity to subpoena and examine witnesses, it has no effective method of acquiring the evidence the Board demands. This argument altogether misses the point. If in fact Natter's contentions are true, we see no reason why it could not have substantiated those allegations with affidavits of persons who have witnessed or suffered the discrimination. *See, e. g., Alson Mfg. Aero. Div. of Alson Indus., Inc. v. NLRB*, 523 F.2d 470 (9th Cir. 1975). But in any event, the essence of Natter's argument is that it should be entitled to a fishing expedition in order to prove its wholly unsubstantiated assertions that *this particular* local practices invidious discrimination. This, of course, is completely foreclosed by our prior cases cited in the text.

We point out, however, that our enforcement of the Board's order does not necessarily close forever the issue of whether the Union unlawfully discriminates. We recently explained that there are some circumstances which, although not justifying an employer's refusal to bargain, do provide a basis for an employer seeking remedial aid from the Board, including a revocation of the Union's certification. *NLRB v. Lee Office Equip.*, 572 F.2d 704, 707 (9th Cir. 1978). We leave for another day the question of whether an employer can successfully base such a motion on proof of the Union's unlawful discriminatory practices. *See generally* Leslie, *Governmental Action and Standing: NLRB Certification of Discriminatory Unions*, 1974 Ariz.St.L.J. 35.