**FORD MOTOR COMPANY, Ford Motor Credit Co. and Francis Ford, Inc., Petitioners,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

Nos. 79–7647, 79–7654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1981.

Decided Aug. 24, 1981.

Rehearing and Rehearing En Banc Denied April 5, 1982.

Before GOODWIN, KENNEDY and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge.

Francis Ford, Inc. petitions this court to review an F.T.C. order finding it in violation of § 5 of the F.T.C. Act, 15 U.S.C. § 45 (unfair trade practices). We have reviewed the petition, and set aside the order.

Francis Ford, Inc. is an Oregon automobile dealership. Its practice in repossessing cars has been to credit the debtor for the wholesale value of the car, charge him for indirect expenses (*i. e.*, overhead and lost profits) as well as direct expenses (*i. e.*, refurbishing) associated with repossession and resale, and sell the repossessed vehicle at retail keeping the "surplus." In doing so, Francis Ford claims it is doing what is commonly done throughout its industry.

The F.T.C. does not approve of the described practice. Nor does it approve of a number of other credit practices now commonly in use in a wide variety of industries. See its investigations of the credit business, and its recent attempted rulemaking. *In re Proposed Trade Regulation Rule*: Credit Practices, 40 Fed.Reg. 16,347 (1975).

In order to attack Francis Ford's practice, the F.T.C. began in 1976 an adjudicatory action against Ford Motor Co., Ford Credit Co., and Francis Ford, Inc. The commission alleged that the respondents had violated § 5 of the F.T.C. Act by failing to give defaulting customers more than wholesale value for their repossessed cars, and by improperly charging them with indirect expenses such as overhead and lost profits. Parallel proceedings were commenced against Chrysler Corp. and General Motors, their finance subsidiaries, and two dealers. The National Association of Car Dealers sought to intervene to protect the interests of its members but was not allowed to do so. Eventually, all the respondents except Francis Ford settled with the F.T.C.

Shortly after the consent decrees were entered, the administrative law judge held that Francis Ford's credit practices had violated § 5 of the F.T.C. Act, but that the commission had failed to establish that Francis Ford's acts were substantially injurious to its customers. Both Francis Ford and complaint counsel for the F.T.C. appealed to the full commission. The commission deleted the portion of the order favorable to Francis Ford, and affirmed the administrative law judge's decision. The order directed Francis Ford to cease its present credit practices, and to adopt the F.T.C.'s view of proper credit practices under ORS 79.5040 (U.C.C. § 9–504).

The narrow issue presented here is whether the F.T.C. should have proceeded by rulemaking in this case rather than by adjudication. The Supreme Court has said that an administrative agency, such as the F.T.C., "is not precluded from announcing new principles in the adjudicative proceeding and that the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974). *See also, Securities Comm'n v. Chenery Corp.*, 332 U.S. 194, 202–203, 67 S.Ct. 1575, 1580–81, 91 L.Ed. 1995 (1947). But like all grants of discretion, "there may be situations where the [agency's] reliance on adjudication would amount to an abuse of discretion

...." *Bell Aerospace Co.*, 416 U.S. at 294, 94 S.Ct. at 1771. The problem is one of drawing the line. On that score the Supreme Court has avoided black-letter rules. *See id.* at 294, 94 S.Ct. at 1772 ("[i]t is doubtful whether any generalized standard could be framed which would have more than marginal utility....") Lower courts have been left, therefore, with the task of dealing with the problem on a case-by-case basis.

The Ninth Circuit recently made such an attempt in *Patel v. Immigration & Naturalization Serv.*, 638 F.2d 1199 (9th Cir. 1980). In *Patel*, the Immigration and Naturalization Service, by an administrative adjudication, added a requirement to a regulation governing permanent immigration to this country. The court disallowed the requirement because the requirement changed past practices through the "prospective pronouncement of a broad, generally applicable requirement, amount[ing] to 'an agency statement of general or particular applicability and future effect.'" *Id.* at 1204, n.5. In the court's view, the rule of law should have been established by rulemaking because, unlike *Bell Aerospace, supra*, the case before it called for a general standard, not a case-by-case determination. *Id.* at 1205. *Patel* cited Professor Davis for the view that courts should require agencies to use rulemaking procedures when the agency retroactively adopts new law or where the parties have relied on the precedents. 2 Davis, *Administrative Law Treatise*, § 7:25 at 124 (1979). The thrust of the *Patel* holding, therefore, is that agencies can proceed by adjudication to enforce discrete violations of *existing* laws where the effective scope of the rule's impact will be relatively small; but an agency must proceed by rulemaking if it seeks to change the law and establish rules of widespread application.

In the present case, the F.T.C., by its order, has established a rule that would require a secured creditor to credit the debtor with the "best possible" value of the repossessed vehicle, and forbid the creditor from charging the debtor with overhead and lost profits. The administrative deci-

sion below so holds. Framed according to *Patel*, the precise issue therefore is whether this adjudication changes existing law, and has widespread application. It does, and the matter should be addressed by rulemaking.

The F.T.C. admits that industry practice has been to do what Francis Ford does—credit the debtor with the wholesale value and charge the debtor for indirect expenses. But the F.T.C. contends that Francis Ford's particular practice violates state law (ORS 79.5040); that the violation will not be reached by the proposed trade rule on credit practices; and that this adjudication will have only local application. The arguments are not persuasive.

By all accounts this adjudication is the first agency action against a dealer for violating ORS 79.5040 by doing what Francis Ford does. Although the U.C.C. counterpart of ORS 79.5040 is enacted in 49 states, nearly word for word, we have been cited to no case which has interpreted the provision to require a secured creditor to credit the debtor for the "best possible price" and not charge him for overhead and lost profits. It may well be that Oregon courts will interpret U.C.C. § 9–504 in the manner advocated by the F.T.C. if the question is put to them. But it is speculation to contend, as does the F.T.C. here, that Francis Ford is in violation of *existing* Oregon law. One of the basic characteristics of law is that potential violators have, or can obtain, notice of it. No notice of the F.T.C.'s view of the law has been pointed out to us.

The F.T.C. could have formulated its position on U.C.C. § 9–504 and its application to the credit practices of car dealerships in its proposed trade rule on credit practices. It did not do so. The pending rulemaking proceeding and this adjudication seek to remedy, more or less, the same credit practices. Although the former is directed against the practices, *inter alia*, of car dealers in their accounting of deficiencies, and the latter is directed against a car dealer by reason of his practices in failing to account for surpluses, both matters are covered by U.C.C. § 9–504. If the rule for deficiencies

is thought by the F.T.C. to be "appropriately addressed by rulemaking," it should also address the problem of accounting for surpluses by a rulemaking proceeding, and not by adjudication.

Ultimately, however, we are persuaded to set aside this order because the rule of the case made below will have general application. It will not apply just to Francis Ford. Credit practices similar to those of Francis Ford are widespread in the car dealership industry; and the U.C.C. section the F.T.C. wishes us to interpret exists in 49 states. The F.T.C. is aware of this. It has already appended a "Synopsis of Determination" to the order, apparently for the purpose of advising other automobile dealerships of the results of this adjudication. To allow the order to stand as presently written would do far more than remedy a discrete violation of a singular Oregon law as the F.T.C. contends; it would create a national interpretation of U.C.C. § 9–504 and in effect enact the precise rule the F.T.C. has proposed, but not yet promulgated.

Under these circumstances, the F.T.C. has exceeded its authority by proceeding to create new law by adjudication rather than by rulemaking.

The order is vacated.

## ORDER

The panel voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court having been advised of the suggestion for an en banc rehearing, a judge in active service requested that a vote be taken on the suggestion for rehearing en banc. Fed.R.App.P. 35(b). Upon the vote of the eligible judges in active service, a majority voted against en banc rehearing.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

REINHARDT, Circuit Judge, dissenting from denial of rehearing en banc:

I dissent from the court's refusal to rehear this case en banc. I believe the opinion creates unnecessary and undesirable confusion as to the state of the law in our circuit, and that the standard we appear to announce conflicts with the general principles of administrative law, previously enunciated by the Supreme Court, which will remain applicable in the rest of the nation. Unless the Supreme Court grants certiorari, and applies a different standard than we appear to be adopting, government agencies will be required to ask us on a case by case basis to limit, narrow, and explain away the overly broad rationale set forth in the opinion.

I believe that our circuit would be better served if we did the necessary job ourselves. I think that it is *our* function to correct our errors in cases of general importance, especially when our decision conflicts with earlier binding precedent in our circuit and when we have failed to distinguish, or even discuss, that applicable precedent. The best way to do this is through our en banc process.

The panel explains its decision by stating "[u]ltimately, however, we are persuaded to set aside this order because the rule of the case made below will have general application. It will not apply just to Francis Ford." *Supra,* at 1010. This statement simply cannot be reconciled with our recent decision in *NLRB v. St. Francis Hospital of Lynwood,* 601 F.2d 404 (9th Cir. 1979), which remains the law in this circuit. There we said:

> The Hospital initially argues that the holding of the *Mercy* decision, because it is to be generally applied, was tantamount to a rule. The Hospital further contends that, because of the Board's failure to follow the procedures for agency rulemaking, as delineated in 5 U.S.C. § 553, the rule is unenforceable. Contrary to the Hospital's argument, it has been consistently held that "the Board is not precluded from announcing new principles in an adjudicative proceeding and ... the choice between rulemaking and adjudication lies in the first instance within the Board's discretion. Thus, the mere fact that the Board created a binding policy by adjudication does not affect the policy's validity especially where it covers an area in which the Board is permitted to act pursuant to its discretion.

601 F.2d at 414 (citations omitted).

Nor can the panel's explanation of its decision be reconciled with *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), *NLRB v. Wyman-Gordon,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), or *Securities Comm'n v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Those cases make it clear that administrative agencies are authorized to engage in decision making which results in standards to be applied in all future cases. The panel's statement that rulemaking is required because the decision would have "general application," and because it will have an effect in the long run on persons other than the individual whose case was before the agency, constitutes an unwarranted and unique acceptance of the "perennial plaint" that decisions of administratives agencies should be invalidated because of their "general" impact. *See British Caledonian Airways, Ltd. v. CAB,* 584 F.2d 982, 992 (D.C.Cir.1978).

The panel's opinion pays lip service at most to the basic principle of administrative law that "the choice between rulemaking and adjudication lies in the first instance within the Board's discretion." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); *NLRB v. Children's Baptist Home,* 576 F.2d 256 (9th Cir. 1978). While repeating the rule, the panel opinion gives it no weight and no significance, and the panel fails to state explicitly that the agency abused its discretion.

The panel cites only one of our prior decisions, *Patel v. I&NS,* 638 F.2d 1199 (9th Cir. 1980). In *Patel,* we refused to permit the Immigration and Naturalization Service to use an earlier adjudication to create or impose a job creation requirement on an alien seeking the investor exemption from

labor certification requirements. The holding in *Patel* turned on two factors: (1) the I&NS's "confusion" regarding the job creation requirement, *id.* at 1205; *cf. Ruangswang v. I&NS*, 591 F.2d 39, 46 (9th Cir. 1978) (Sneed, J., concurring); and (2) "the resulting hardship to Patel . . . ." *Patel*, 638 F.2d at 1205. Neither of those factors is present here, and the holding in *Patel* does not support the panel's analysis.

Since the call for an en banc vote failed to muster the support of an absolute majority of the active members of this court who were eligible to vote,[1] it would appear that a number of my colleagues are not as concerned as I am with the conflict between the broad, generalized statement in the panel's opinion and our own prior precedents which carefully apply the applicable line of Supreme Court cases in this area. My colleagues may believe that the broad, generalized statement is limited by the specific explanations subsequently offered in the panel's opinion. Specifically, they may feel that the opinion stands only for the proposition that an administrative agency decision which creates a new and different national interpretation of the uniform law (in this case the Uniform Commercial Code) applicable in all of the states of this nation is beyond an agency's decision making powers, at least where the agency has proposed a rule which would have that effect but has not yet enacted it.[2] If this is my colleagues' view, the damage caused by the panel's opinion will be minor and temporary. I think we would be better served, however, if we would clarify the law of the circuit now, through the en banc procedure, rather than allow the unnecessary confusion which will inevitably exist in the field of administrative law pending the time that we explain the limitations of the majority's opinion in our subsequent decisions.

The en banc procedure provides us with a valuable tool. It allows us to function efficiently, to resolve intracircuit conflicts and to ensure that cases of major importance are decided in a manner which reflects the law as we see it as a circuit, and as we will apply it in the long run. When we fail to take advantage of that tool, we create unnecessary work for the Supreme Court, and for ourselves if the Supreme Court fails to act. I regret that we did not take the opportunity to clarify the law in the case before us. I am confident that had we done so we would have expressed the applicable principles of administrative law in a different and more traditional manner than the panel does here.

1. Under our limited en banc rule, a call for an en banc vote prevails only when affirmative votes are cast by a majority of the 23 active members of the court who are not disqualified from voting. We then form a limited en banc panel of 11 judges, comprised of 10 judges drawn at random and the Chief Judge. When we deny an en banc request, after a vote is called for, we do not announce the number of judges who voted to grant the request. All that we reveal by our announcement that an unsuccessful vote was taken is the fact that fewer than 12 active judges voted to hear the case en banc. The reference in the text to the requirement of an absolute majority therefore does not constitute any indication as to the number of judges supporting the request in this case or any indication as to how the court divided. To the contrary, it is merely a reflection of the rule we follow in all cases.

2. In *Patel*, while our holding was limited to the factors described in the text, *supra*, we also concluded that the so-called *Heitland* rule established in an adjudicatory proceeding was an "improper circumvention of rule-making procedure." We stated:

> Only months before, the INS itself had recognized the desirability of establishing a job-creation standard by rulemaking when it proposed the 1973 regulation. *See* 37 Fed.Reg. 23274 (1972); 38 Fed.Reg. 1379 (1973). The INS eventually failed to include the job-creation standard in its rule. Under the authority of *Wyman-Gordon*, we conclude that if the INS wished to add the job-creation criterion, it should have done so in a rulemaking procedure.

*Patel v. INS*, 638 F.2d 1199, 1204 (9th Cir. 1980).

Here, the agency had proposed the adoption of the standard as part of a regulation it was considering, but adopted the standard in an adjudicatory proceeding before the rule-making process was completed. Thus, my colleagues may believe that, as in *Patel*, the agency circumvented the rule-making process and that, notwithstanding the panel's broad general statements, the panel opinion will be so limited if we are asked to consider it in future cases.