722 F.2d 1451
 3 Soc.Sec.Rep.Ser. 317, Medicare&Medicaid Gu 33,545
STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, Plaintiff-Appellant,
v.
Margaret H. HECKLER,* Secretary of Health and
Human Services, Defendant-Appellee.
 No. 83-3695.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1983.
Decided Jan. 3, 1984.
 
 Carmel C. Mackin, Olympia, Wash., for plaintiff-appellant.
 William J. McIntyre, Seattle, Wash., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before SNEED, NELSON, and REINHARDT, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The Department of Social and Health Services of the State of Washington (DSHS) appeals the disallowance of its claim for federal financial assistance for operation of medicaid programs in four state facilities. The Grant Appeals Board (GAB) of the Department of Health and Human Services (HHS) disallowed the claims and the district court granted summary judgment in favor of the Secretary of HHS. We affirm.
 
 I.
 FACTS
 
 2
 Under subchapter XIX of the Social Security Act, 42 U.S.C. Secs. 1396-1396j (1976 & Supp. V 1981), in order for a state to obtain federal funds for payments to medicaid patients, there must be a valid provider agreement between the state survey agency, which is designated by the state to administer the state medicaid plan, and the care facility. Before entering into a provider agreement, the state survey agency must certify that the facility is in conformity with federal requirements. A facility with defects may be certified only if the survey agency (a) finds that the deficiencies do not jeopardize the health and safety of the patients and (b) accepts a plan of correction.
 
 
 3
 The plan of correction must list the deficiencies found and set forth a scheme for remedying them within a definite time schedule. If the state survey agency finds the plan of correction acceptable, it then certifies the facility on a Certification and Transmittal (C & T) form. The state agency enters into the provider agreement with the facility based upon the certification. Once the provider agreement is in effect, federal funds are disbursed for a period that reaches back to the date of certification.
 
 
 4
 In the present case, a federal auditor disallowed funding for four state facilities on the ground that no valid provider agreement existed. Each facility was surveyed and defects were found. The facilities subsequently accepted plans of correction and executed C & T forms at various intervals after the plans were accepted. The provider agreements were signed after the C & T forms were executed, but the agreements were purported by the State to be effective as of the dates corresponding roughly to the date the surveys were complete rather than the later date of certification. The district court affirmed the disallowances for the period before the facilities were certified.
 
 II.
 STANDARD OF REVIEW
 
 5
 This court exercises de novo review over the district court's grant of summary judgment in favor of the Secretary of HHS, as the district court is in no better position to review agency action than is the court of appeals. Asarco, Inc. v. U.S. Environmental Protection Agency, 616 F.2d 1153, 1158-61 (9th Cir.1980). We must decide whether any genuine issue of material fact remains for trial and whether the district court correctly applied the substantive law. See Taxpayers For Vincent v. Members of the City Council of the City of Los Angeles, 682 F.2d 847, 848-49 (9th Cir.1982), prob. juris. noted, --- U.S. ----, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983). The district court's power to review GAB decisions, however, is limited to ascertaining whether there has been a clear error of judgment by the GAB and whether the GAB has considered the relevant factors. Nance v. Environmental Protection Agency, 645 F.2d 701, 705 (9th Cir.1981) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)), cert. denied, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981).
 
 III.
 THE GAB'S INTERPRETATION OF THE REGULATIONS
 
 6
 The DSHS contends that the present disallowance disputes were governed by 42 C.F.R. Sec. 449.33(a)(6) (1977).[1] The GAB found that this regulation was in effect for part of the period relevant to the disallowances but that the pertinent regulation was 42 C.F.R. Sec. 442.12(a) and (b) (1978).[2] The latter section became effective October 1, 1978 and the disallowances occurred between July 1, 1977 and April 26, 1978. The regulations were again amended, but after the material dates of this action.
 
 
 7
 The GAB held that the language in the two regulations is substantially the same and that both establish that a valid provider agreement may not be executed before the date of certification. DSHS disagrees. It argues that the earlier regulation is more ambiguous and less restrictive in its terms and that the GAB abused its discretion in finding the regulations substantially the same. We cannot agree. Given that the language is virtually identical and that the preamble to the 1978 amendment specifically states that "These regulations reorganize and redesignate, with clarifying editorial changes, the current regulations for the medicaid program .... No policy changes have been made in the existing regulations," 43 Fed.Reg. 45,176 (1978), it was not unreasonable for the GAB to find that 42 C.F.R. Sec. 442.12(a) and (b) was the pertinent regulation.
 
 IV.
 
 8
 THE GAB DID NOT ENGAGE IN ADJUDICATIVE RULEMAKING
 
 
 9
 The DSHS also argues that the GAB improperly relied on two unpublished decisions as precedent, Maryland Department of Health and Mental Hygiene, Decision No. 107, July 2, 1980, and New Jersey Department of Human Services, Decision No. 137, December 1, 1980. DSHS further argues that because these cases establish new methods of obtaining certification which affect the substantive rights of the plaintiff, the GAB's reliance on these unpublished opinions is, in effect, improper adjudicative rulemaking.
 
 
 10
 We agree with the district court's rejection of the plaintiff's argument here. As the district court concluded, the GAB's interpretation of the regulation, without reference to these two unpublished cases, was reasonable in light of the language of the regulation alone. The reference to these two unpublished cases is dicta. Moreover, the language of the regulation itself gave the DSHS reasonable notice of the certification requirement. The regulation is clear on its face, and the GAB cannot be said to have changed existing law either in the cases that are the subject of this appeal or in the New Jersey or Maryland cases. Thus, there is no merit to plaintiff's claim that the GAB engaged in improper adjudicative rulemaking. See National Labor Relations Board v. Bell Aerospace Co., 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); Ford Motor Co. v. Federal Trade Commission, 673 F.2d 1008, 1009 (9th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982).
 
 V.
 
 11
 THE HHS IS NOT ESTOPPED FROM DISALLOWING THE FUNDS
 
 
 12
 Finally, the DSHS argues that HHS is estopped from disallowing the funds because in a telephone conversation between state survey official John Gerth and federal employee John McFadden, Gerth was given to understand that the effective certification date could be as early as the last day of the survey, provided the survey showed that the facility was in a certifiable condition. The DSHS contends that it relied on this assertion to its detriment.
 
 
 13
 A party seeking to estop the government must show the presence of four essential elements: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. TRW, Inc. v. Federal Trade Commission, 647 F.2d 942, 950-51 (9th Cir.1981). In addition, the government action upon which estoppel is to be based must amount to affirmative misconduct. Id.
 
 
 14
 The GAB found it unnecessary to decide the estoppel issue because, even if the federal government were estopped by McFadden's alleged representations, the disallowances were proper since there was evidence that the facilities were not in certifiable condition. We agree. The record supports the determination by the GAB that the facilities were not in substantial compliance with federal requirements.
 
 
 15
 AFFIRMED.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), we substitute Margaret H. Heckler, successor to the original appellee Richard S. Schweiker, as the Secretary of Health and Human Services
 
 
 [1]
 42 C.F.R. Sec. 449.33(a)(6) (1977) states:
 (6) Provide that execution of the single State agency provider agreement with a facility for payments under the plan shall be contingent upon certification in accordance with the provisions of paragraph (a)(1) and (2) of this section. The term of an agreement may not exceed a period of 1 year and the effective date of such agreement may not be earlier than the date of certification....
 
 
 [2]
 42 C.F.R. Sec. 442.12 (1978) provides as follows:
 (a) A medicaid agency may not execute a provider agreement with a facility for SNF or ICF services nor make medicaid payments to a facility for those services unless ... the state survey agency has certified the facility under this part to provide those services ....
 (b) The effective date of an agreement may not be earlier than the date of certification.
 * * *