### EL MONTE TOOL AND DIE CASTING, INC., Petitioner,

v.

### NATIONAL LABOR RELATIONS BOARD, Respondent.

#### No. 79–7616.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1980.

Decided Nov. 19, 1980.

David L. Keenan, Kirshman & Rich, Marina Del Rey, Cal., for petitioner.

Richard A. Cohne, N. L. R. B., Washington, D. C., argued for respondent; Elliott Moore, Washington, D. C., on brief.

Before FERGUSON and CANBY, Circuit Judges, and HATTER,* District Judge.

FERGUSON, Circuit Judge:

El Monte Tool and Die, Inc. ("Company") petitions for review of a National Labor Relations Board ("NLRB") order directing it to bargain with the Sheet Metal Workers International Association, Local Union 170, AFL–CIO ("Union"). The Union was certified as representative of the Company's employees after an election held January 21, 1977. The Company alleges that the election was invalid and challenges the NLRB procedures. We reject its arguments and affirm the NLRB order.

## I. FACTS

On November 3, 1976, the Union filed for certification as representative of a unit of the Company's employees. The NLRB found the unit to be appropriate for bargaining and conducted an election on January 21, 1977. The Union won.

Thereafter, the Company protested the election to the NLRB, claiming that the Union misrepresented Company policies during the election campaign. In particular, the Company objected to three statements that appeared in two leaflets distributed to employees shortly before the election. The first statement was disseminated two days before the election:

QUESTION: What does it mean to you if the union loses election?

ANSWER: If the Union loses the election NOTHING HAPPENS, <u>NO RAISES</u> ...... NO NEGOTIATIONS...

---

* The Honorable Terry J. Hatter, Jr., United States District Judge, Central District of California, sitting by designation.

(emphasis and ellipses in original)

The other two statements were extracted from a leaflet distributed the day before the election:

> When the company health insurance plan didn't even scratch the surface and we got stuck with a big medical bill, <u>nobody wanted to listen</u>.
> When some of our wages were cut by a foreman or a supervisor or some fair haired leader appointed by the boss, nobody had the decency to discuss it with us. (emphasis in original) [1]

The Company claimed that these three statements misrepresented its employee health plans and its wage policy.

The Regional Director of the NLRB overruled these objections, finding the statements campaign propaganda. Nonetheless, the Company refused to bargain with the Union. The general counsel of the NLRB consequently issued a complaint against the Company, alleging violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and § 158(a)(5). The NLRB granted the general counsel's motion for summary judgment and issued a bargaining order. Thereafter, the Company filed a motion for reconsideration with the NLRB. The motion was denied.

The Company petitions this court for review of the NLRB order pursuant to 29 U.S.C. § 160(f). It claims that it should not be forced to bargain with the Union because each of the three challenged statements was a material misrepresentation that irremediably tainted the election proc-ess, or at least that the cumulative impact of these statements prevented a free and fair election. The Company also challenges the NLRB's refusal to conduct an evidentiary hearing prior to entering the order. Finally, the Company claims that the NLRB reviewed the record in an erroneous manner.

We reject these arguments and affirm.

## II. MISREPRESENTATIONS

### A. *Materiality of the Statements*

█ After losing the election, the Company bore the burden of supplying to the NLRB prima facie evidence of substantial and material issues requiring the election to be set aside. *NLRB v. Masonic Homes of California, Inc.,* 624 F.2d 88, 89 (9th Cir. 1980); *Alson Mfg. Aerospace Division of Alson Industries, Inc. v. NLRB,* 523 F.2d 470, 472 (9th Cir. 1975). To support this burden, the Company presented as its only evidence two employee affidavits discussing the adequacy of the Company's health plan and wage practices.

These affidavits merely asserted that the statements made by the Union in its leaflets were incorrect. Absent proof that the challenged statements so deceived the employees as to affect the election process, error in a representation does not determine its materiality. *Hollywood Ceramics Co., Inc.,* 140 N.L.R.B. 221 (1962). *See NLRB v. Sauk Valley Mfg. Co., Inc.,* 486 F.2d 1127, 1131–32 (9th Cir. 1973) (upholding NLRB decision holding immaterial union statements regarding wages and benefits because employer "failed to submit any evi-

---

1. The entire leaflet contains a series of statements followed by the phrase "Nobody Wants to Listen" in repetitive fashion:

> Nobody wanted to <u>listen</u> to us.
> How many times did we say to each other, "Why won't the boss listen to our problems?"
> When we ask for a raise which we had honestly earned, *nobody wanted to listen.*
> When the company health insurance plan didn't even scratch the surface and we got stuck with a big medical bill, <u>nobody wanted to listen</u>.
> Management keeps pushing us for more and more production, but who in management really cares about us? <u>Nobody wants to listen.</u>
> When some of our wages were cut by a foreman or a supervisor or some fair haired leader appointed by the boss, nobody had the decency to discuss it with us.
> When we have other legitimate grievances to take up with management, they're always too busy to discuss our problems. <u>Nobody has the time and, nobody wants to listen.</u>
> \* \* \* \* \* \*
> BUT, <u>THE UNION WILL LISTEN TO US</u> SO LET'S KEEP IT GOING!
> \* \* \* \* \* \*

dence of employee confusion on this issue, and there is no indication that the misrepresentation affected the election outcome").

The Company has failed to present prima facie evidence showing that the challenged statements materially or substantially affected the election. Indeed, remarks on wages and health benefits which the employees themselves have received are particularly within the province of topics which they may independently evaluate and are, hence, of minimal significance. *See NLRB v. G. K. Turner Associates,* 457 F.2d 484, 487 (9th Cir. 1972).

 Upon considering the evidence, the NLRB characterized the challenged statements as "typical campaign propaganda" and concluded that they were not material. Those findings are conclusive on review if supported by substantial evidence on the record considered as a whole. *NLRB v. Heath Tec Division/San Francisco,* 566 F.2d 1367, 1369 (9th Cir.), *cert. denied,* 439 U.S. 832, 99 S.Ct. 110, 58 L.Ed.2d 127 (1978); *Portland Willamette Co. v. NLRB,* 534 F.2d 1331, 1334 (9th Cir. 1976). For the reasons outlined above, we affirm the NLRB's conclusion that the Union statements were mere campaign rhetoric.[2]

### B. Cumulative Effects

The Company claims that even if each remark did not materially affect the election, the NLRB erred in not concluding that their cumulative impact invalidated the election. In making this claim, the Company relies on our statement in *NLRB v. Winchell Processing Corp.,* 451 F.2d 306, 310 (9th Cir. 1971), that the NLRB must consider "the totality of circumstances preceding the election, not examine each statement as though the employees heard it alone." *See S. H. Kress & Co. v. NLRB,* 430 F.2d 1234 (5th Cir. 1970); *NLRB v. Trancoa Chemical Corp.,* 303 F.2d 456 (1st Cir. 1962).

The Company's reliance on these cases is misplaced. Each dealt with a potential misrepresentation of *union* benefits and contracts. *Winchell,* for instance, concluded:

Assertions about union benefits must be held to a fairly close standard of accuracy since a union's statements about its own contracts sound authoritative. Employees are likely to accept them uncritically.

451 F.2d at 309. *See also G. K. Turner, supra,* at 487 (court considers whether party making alleged misrepresentation had special knowledge of topic involved which made its words sound authoritative).

 Here, however, the challenged statements did not involve Union promises of benefits or other issues within the Union's special knowledge. Moreover, the Company has presented no evidence that the employees were likely to accept uncritically Union statements regarding the Company's wages and health plans. Absent proof of confusion or effect on the election process, we will not overturn the NLRB decision that the statements were immaterial campaign rhetoric.

### III. NLRB PROCEDURE

#### A. Evidentiary Hearing

 The Company argues that the NLRB incorrectly refused to grant an evidentiary hearing on the issue of materiality. Absent prima facie evidence of substantial and material issues which justify setting aside an election, this court will not find the lack of an evidentiary hearing erroneous. *Natter Mfg. Corp. v. NLRB,* 580 F.2d 948, 951 (9th Cir. 1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979). Since we conclude that the company has failed to make the required prima facie showing, no error was committed by the NLRB in refusing to hold the evidentiary hearing.

---

**2.** The company asserts that it did not have adequate time to respond to the Union's misrepresentation before the election. Adequate response time will negate the harm of material misrepresentation. *Hollywood Ceramics Co., Inc.,* 140 NLRB 221 (1962).

Because we have held that the statements were not material within the *Hollywood Ceramics* rule, we do not reach the issue of the adequacy of time for the company to respond to the leaflets.

## B. *Review of the Record*

■ The Company claims finally that the NLRB committed error by failing to consider the record as a whole. It bases its claim, first, on the NLRB order mistakenly reversing the sequence in which the two challenged leaflets were distributed. The Company also contends that the NLRB failed to consider the evidence presented because the two employee affidavits were not included in the official NLRB record. These arguments are without merit.

Although the reversal of the distribution dates was erroneous, that error was harmless. It did not affect the content of the alleged misrepresentations or the NLRB's conclusions with respect to their materiality.[3]

As to the Company's second point, it is true that the official record compiled by the NLRB did not include in its table of contents the employee affidavits. The Company's contention that they were not considered, however, is not supported by the facts. The affidavits were prepared in front of an NLRB attorney. As the Company concedes, the NLRB included information in its decision and order which appeared in the affidavits. We, therefore, cannot conclude that the affidavits were erroneously excluded.

## CONCLUSION

The Company has not demonstrated that the alleged misrepresentations materially affected the election process. The bargaining order is AFFIRMED.

---

**3.** Plaintiff argues that the reversal of dates affected the NLRB's conclusion that the company had adequate time to respond to the union material. That argument is without merit. The reversal alters the sequence in which the leaflets were distributed to employees, not the timing. The company had two days to respond to one leaflet and one day for the other. The NLRB concluded that because the company distributed materials on the morning of the election, it could have responded at that time to the leaflets. The order of distribution does not alter that judgment.