NATIONAL LABOR RELATIONS BOARD, Petitioner,

and

Hospital and Institutional Workers Union, Local 250, Service Employees International Union, AFL–CIO, Intervenor,

v.

BELCOR, INC. d/b/a San Jose Care & Guidance Center, Respondent.

No. 80–7369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1981.

Decided Aug. 7, 1981.

Susan L. Dolin, Atty., N.L.R.B., Washington, D. C., for petitioner.

David S. Durham, Littler, Mendelson, Fastiff, San Francisco, Cal., for respondent.

Before TRASK and BOOCHEVER, Circuit Judges, and CURTIS,* District Judge.

* The Honorable Jesse W. Curtis, Senior District Judge for the Central District of California, sitting by designation.

BOOCHEVER, Circuit Judge:

The National Labor Relations Board has petitioned for enforcement of its order that Belcor, Inc. bargain with Hospital and Institutional Workers Union, Local 250, the certified collective bargaining agent. The Board's decision and order is reported at 248 N.L.R.B. 153 (1980). The principal question concerns the propriety of the conduct of a union representation election. Belcor has also raised an issue regarding the Board's failure to require submission of the evidence relied upon by the regional director in rejecting objections to the conduct of the election. We find that, in the absence of submission of evidence by the regional director two issues require a hearing. Thus, the Board's petition for enforcement is denied and the case is remanded for further proceedings.

The employer, Belcor, Inc., operates a mental health care facility in San Jose, California. Local 250 represents hospital service workers. On May 30, 1979, the union and Belcor signed a stipulation for certification upon consent election.[1] The Board's regional representative conducted an election on July 6, 1979. Of 50 employees eligible to vote, 32 voted for the union, 7 against, 7 ballots were challenged and 4 employees did not vote. The challenged ballots were too small in number to affect the outcome of the election.

On July 13, 1979, Belcor filed a number of objections relating to the conduct of the election. To substantiate its claims, the company filed documentary evidence and seven affidavits.

On August 17, after an *ex parte* investigation, the regional director issued a report in which he recommended that the Board overrule the company's objections. As required by 29 C.F.R. § 102.69(c), the company then filed with the Board a brief and its exceptions to the regional director's report.

On November 20, in an unreported decision, the Board denied the company's exceptions, adopted the regional director's report, and certified Local 250 as the employees' exclusive collective bargaining representative.

■ In order to obtain judicial review of the election certification, the company refused to bargain with the union. The regional director issued a complaint charging the company with an unfair labor practice under § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5). The company admitted its refusal to bargain and again raised its objections to the conduct of the election. The case was transferred to the Board, the Board issued a motion to show cause why the general counsel's motion for summary judgment should not be granted, and the company again raised its objections to the underlying election. In its decision and order of April 17, 1980, the Board refused to reconsider the issues raised in the representation proceeding and ordered the company to bargain with the union. The Board now seeks enforcement of that order.[2]

## I. FAILURE OF THE REGIONAL DIRECTOR TO SUBMIT THE ENTIRE RECORD

■ In transmitting the election report to the Board, the regional director neither sent the underlying documentation gathered during the region's *ex parte* investigation, nor submitted any of Belcor's affidavits and other documentation. When the company filed its exceptions with the Board, however, it also filed all the documents that it had given the regional director. Therefore, when the Board issued its decision certifying the election, it had before it the regional director's report, the company's exceptions, and the evidence the company had gathered to rebut the regional

---

1. 29 C.F.R. § 102.62(b) (1980).

2. Election certifications are not enforceable final orders, *A.F.L. v. N.L.R.B.*, 308 U.S. 401, 404–407 (1940), but an order to bargain following an unfair labor practice hearing is a final order. 29 U.S.C. § 160(e). In the Ninth Circuit an employer challenging election irregularities must present its objections both in the certification proceeding and the unfair labor practice proceeding to preserve the issue for appellate review. *N.L.R.B. v. Children's Baptist Home*, 576 F.2d 256, 261–262 (9th Cir. 1978).

director's report. This material is contained in the appellate record. Therefore, any error of the regional director in failing to transmit Belcor's evidence to the Board is harmless.

The company now argues, however, that without the evidence gathered to prepare the regional director's report, the Board was unable to ascertain whether the regional director's report was supportable, and therefore the Board could not overrule the company's exceptions. This argument misses the point.

■ If no objections are filed, the regional director will certify an election. 29 C.F.R. § 102.69(b). If a party does file objections, the regional director must determine whether the objections are serious enough to warrant setting the election aside. The determination may be made either on the basis of an administrative investigation, or if "substantial and material" factual disputes exist, on the basis of a hearing. 29 C.F.R. § 102.69(d). In a case where no hearing is conducted, the Board will review the regional director's report and the exceptions filed to it. If it appears that no substantial factual disputes exist, the Board will decide the legal issues presented. On the other hand, if the Board finds that there are factual disputes, the case will be remanded back to the region for a hearing. 29 C.F.R. § 102.69(f). A party contesting factual findings cannot simply state a disagreement with the regional director's report. Objections must be specific and they must be supported "by offers of proof in support of findings to the contrary." *N.L.R.B. v. Kenny,* 488 F.2d 774, 775 (9th Cir. 1974). Furthermore, "the Board is entitled to rely on the report of the Regional Director in the absence of specific

assertions of error." *Id.* at 776 (quoting *N.L.R.B. v. Tennessee Packers, Inc.,* 379 F.2d 172, 178 (6th Cir.), *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967).

■ If there is a dispute between the facts as presented in the regional director's report and the facts as presented in the exceptions, the dispute must be resolved through a hearing. Factual disputes cannot be resolved on the basis of the regional director's *ex parte* investigation. *N.L.R.B. v. Claxton Manufacturing Co.,* 613 F.2d 1364, 1366–67 (5th Cir.), *modified on other grounds,* 618 F.2d 396 (5th Cir. 1980).

In *N.L.R.B. v. North Electric Co., Plant No. 10,* 644 F.2d 580, 584 (6th Cir. 1981), the Sixth Circuit discussed the appropriate appellate procedures to follow where the Board adopts the director's recommendation without the benefit of the evidence before the director. In substance, we agree with these procedures to determine whether the Board abused its discretion in denying a hearing.

■ Where the Board certifies the union without the benefit of either a hearing or the full record, we will construe the "well pleaded factual assertions ... most favorably to [the excepting party]." *Prestolite Wire Division v. N.L.R.B.,* 592 F.2d 302, 307 (6th Cir. 1979). *See also Reichart Furniture Co. v. N.L.R.B.,* 649 F.2d 397 (6th Cir. 1981). If these factual assertions create a material issue of fact, we will remand to the Board to order a hearing. If not, we will affirm the Board's decision. In this case the only question to be resolved is whether the factual issues raised by Belcor are so substantial and material that the Board should have ordered a hearing.[3]

---

3. Belcor also contends that the Board's regulations require forwarding the entire record. The contents of a "record" are discussed in 29 C.F.R. § 102.69(g).

(g) The notice of hearing, motions, rulings, *orders, stenographic report of the hearing,* stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots,

exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a re-

## II. ELECTION IRREGULARITIES

■ Belcor's burden to set aside the election is a heavy one, *N.L.R.B. v. Sauk Valley Manufacturing Co., Inc.*, 486 F.2d 1127, 1130 (9th Cir. 1973), particularly where, as here, there has been such an overwhelming vote in favor of the union. *N.L.R.B. v. Claxton Manufacturing Co., Inc.*, 613 F.2d 1364, 1366 (5th Cir.), *modified on other grounds*, 618 F.2d 396 (5th Cir. 1980). Nevertheless, applying the principles we have set forth above, two issues require further evidentiary hearing.

### A. The *Savair* Violation

In *N.L.R.B. v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), the Court held that a union could not promise waivers of initiation fees for those who signed union recognition slips before an election. The Court concluded that allowing the union to buy endorsements "paints a false portrait of employee support during [its] election campaign." 414 U.S. at 277, 94 S.Ct. at 499.

The company has introduced employee affidavits which state that Rick McGiffen, an employee active in the drive to unionize the health care facility, promised the affiants fee waivers if they would sign recognition slips prior to the election. According to the evidence, eight employees may have signed recognition slips to avoid paying initiation fees.

The Board counters this evidence with two arguments. First it maintains that in a letter to hospital employees and at two pre-election meetings, the union clearly explained its policy of collecting fees. This policy did not include fee waivers of the type condemned by *Savair*. The director's report states that "there can be no basis for concluding that *any* employee was in doubt or misled as to the [union's actual policy]." (emphasis added). This contention is not supportable in view of the employee affidavits stating that they signed recognition slips to avoid paying fees.

■ Second, the Board maintains that McGiffen's illegal offers cannot be attributed to the union. Misconduct which is caused by union adherents rather than by the union itself must be more serious to justify setting an election aside. *N.L.R.B. v. Aaron Bros. Corp.*, 563 F.2d 409, 412 (9th Cir. 1977).

■ The undisputed evidence in this case is that McGiffen was active in the union campaign, served as an election observer, solicited union recognition slips, and distributed "local 250" writing tablets. Activities as union election observers or in campaign organization activities are ordinarily, by themselves, inadequate to prove agency status. *See N.L.R.B. v. Morgan Health Care Center, Inc.*, 618 F.2d 127, 129 (1st Cir. 1980); *Owens-Corning Fiberglass Corp.*, 179 N.L.R.B. 219, 223 (1969), *enf'd*, 435 F.2d 960 (4th Cir. 1970). Nevertheless, we conclude that the evidence might support a finding that the union either authorized or condoned McGiffen's conduct. *Id.; N.L.R.B. v. Golden Age Beverage Co.*, 415 F.2d 26, 32 n.5 (5th Cir. 1969). It was error for the Board to resolve this issue on the basis of the unsupported assertions contained in the regional director's report.

### B. Violation of the 24 Hour Rule

In *Peerless Plywood Co.*, 107 N.L.R.B. 427 (1953), the Board announced a policy of not

---

gional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision.

The first sentence of Subsection (g) does not refer specifically to evidence the regional director might gather during an *ex parte* investigation. The entire first sentence might be construed as referring to the record developed during a hearing. The second sentence refers specifically to the record where there has not yet been a hearing. In that instance, by suggesting that a party challenging an election might furnish evidence to the Board when it is not included in the regional director's report, the second sentence seems to contemplate a situation where the regional director may furnish the Board with only a "report or decision." At best, the regulations are inconclusive. The Fifth Circuit has considered, without deciding, the appropriate interpretation of this regulation in *Birmingham Ornamental Iron Co. v. N.L. R.B.*, 615 F.2d 661, 665–67 (5th Cir. 1980).

allowing mandatory meetings of employees for campaign speeches twenty-four hours before an election. In its ban on such activity, the Board specifically exempted voluntary meetings taking place off company premises in employees' free time. 107 N.L. R.B. at 430. In support of its contention that an illegal meeting took place, Belcor has proffered a five by seven index card which refers to a meeting that was to take place at someone's home. On it is written "Mandatory Attendance." The regional director's report indicates that employees treated the meeting as an informal non-mandatory get-together to discuss the union. This is possibly true, but we can not affirm on the basis of the present record which does not include supporting documentation for the director's conclusion. Resolution of this issue also requires a hearing.

### C. Coercion, Sabotage and Electioneering

In the week prior to the election, a storage shed was burned down and an office was burglarized. Belcor points to these incidents to support its contention that there was an atmosphere of fear and intimidation that made it impossible to hold a fair election. The company has failed to proffer any evidence that would link the incidents to the union, or, for that matter, to show that the incidents were even related to the election. The vandalism might just as well have been caused by a mental patient or third parties. In the absence of a showing that any employee was actually coerced or intimidated by these acts, the company's claim does not raise a material issue of fact. *See N.L.R.B. v. Miramar of California, Inc.,* 601 F.2d 422, 424 (9th Cir. 1979) (union adherents brandishing knives did not intimidate or coerce any employee as to his vote); *N.L.R.B. v. Spring Road Corp.,* 577 F.2d 586, 588 (9th Cir. 1978) (Rock throwing, vandalism to cars and property where union was not involved was inadequate showing to require hearing). *Cf. N.L.R.B. v. Masonic Homes of California,* 624 F.2d 88 (9th Cir. 1980) (the *union* was alleged to have made harassing phone calls and one union adherent refused to allow a female employee to

close the door of her home while soliciting her vote).

In addition, Belcor points to general disorder and raucousness that took place in an area immediately outside the polling area. Rick McGiffen, the union's election observer, called out to several employees to "[c]ome in and vote." One employee asked another employee how she had voted. Other employees said everyone was voting for the union. An employee stated that "[e]verybody stared at me as I entered the voting room. It made me feel uneasy." Another employee, who was wearing a pro-union button, walked in and out of an office that was in view of the polling area. Belcor makes no effort to attribute this conduct to the union. Furthermore, conversations between union representatives and employees do not constitute a violation where they are only ,innocuous neutral statements. *South Pacific Furniture, Inc. v. N.L.R.B.,* 627 F.2d 173, 175 (9th Cir. 1980) (statement by union observer to "come on in and vote" not electioneering). *See also N.L.R.B. v. Vista Hill Foundation,* 639 F.2d 479 (9th Cir. 1980) (court sustained an order where extensive conversations took place).

The employee conduct in the health care facility's lounge might be compared to that in *N.L.R.B. v. Aaron Brothers Corp.,* 563 F.2d 409, 412 (9th Cir. 1977), where in a room adjacent to the polling area there were "loud cat calls" and "cheering and shouting." Employees yelled "come on man, let's do it." The court rejected the company's contention that this conduct necessitated a hearing absent evidence that any employees were "intimidated or influenced" by the conduct. Belcor's showing that the conduct in the lounge made affiant Morales "uneasy" is inadequate to demonstrate that any employee was unable to exercise his or her free choice at the polls. *Spring City Knitting Co. v. N.L.R.B.,* 647 F.2d at 1019 (1981).

### D. Voting Lists

Affiant Sandoval stated that the "*observers* [emphasis added] had a list in front of them." Union and employer agents are not

allowed to keep separate lists of voters in the presence of voters at the polls. This does not apply to election observers who need the official voting list to determine who is eligible to vote. *See Piggly-Wiggly # 011*, 168 N.L.R.B. 792, 793 (1967) ("It [is] the policy of the Board to prohibit anyone from keeping any list of persons who have voted, aside from the official eligibility list used to check off the voters as they receive their ballots"). Not surprisingly, the observers in this case did have a list. There is no suggestion that anyone other than the election observers had access to a list. The evidence in this case does not warrant a hearing on the issue.

### E. Failure to Provide Ballots in Spanish

The pre-election sample ballots and instructions were printed in English. The employer never suggested before the election that Spanish language ballots should have been supplied. *See N.L.R.B. v. Lowell Corrugated Container Corp.*, 431 F.2d 1196, 1197 (1st Cir. 1970) (employer's pre-election failure to suggest need for foreign language ballots is "compelling evidence that the proposed procedure was adequate"). *Fibre Leather Manufacturing Corp.*, 167 N.L.R.B. 393 (1967), cited by Belcor, where the Board refused to certify an election, is not on point. In that case the Board was made aware of a potential foreign language problem prior to the election. There is no evidence that any Spanish speaking employee was actually confused about the voting procedure. This contention should not be the subject of a hearing.

### F. Union Logos

The company next complains that the customary small union "bug" or logo that appears on items manufactured by union labor was imprinted on identification badges worn by election observers. Belcor's statement that this "display of . . . union insignia by the Board makes it apparent that the election must be set aside," is frivolous.

### G. Misrepresentations

The company's final contention is that the union substantially misrepresented facts about the employer that impaired the election. It objects to a letter mailed to employees sixteen days before the election. The letter blames the nursing home industry for preventing a bill from passing that allegedly would have allowed a wage increase for hospital employees. This claim must also be rejected. First, the company had ample time to respond. The election was held more than two weeks after the date of the letter. *See Spring Knitting Co. v. N.L.R.B.*, 64 F.2d at 1017 (9th Cir. 1981) (eight day interval adequate time to respond). Furthermore, the issue relates to general political issues and not specific statements of fact that might be given more credibility because of their source. *See Heavenly Valley Ski Area v. N.L.R.B.*, 552 F.2d 269, 272 (9th Cir. 1977). Belcor has not offered any evidence that the letter deceived the employees so as to affect the election process. *See El Monte Tool & Die Casting, Inc. v. N.L.R.B.*, 633 F.2d 160, 162–63 (9th Cir. 1980). Moreover, the letter does not even relate specifically to the election, but is addressed to all union members.

The case is remanded to the Board with instructions to hold an evidentiary hearing related to the alleged *Savair* and *Peerless Plywood* violations. The Board's petition to enforce its order is accordingly denied.